IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL STANSELL, | ) | CASE NO. 1:15CV01303 |
| | ) | |
| Petitioner, | ) | |
| | ) | CHIEF JUDGE PATRICIA A. GAUGHAN |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| LaSHANN EPPINGER, | ) | JONATHAN D. GREENBERG |
| Warden | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | **(Doc. Nos. 1, 15, 16)** |

This matter is before the undersigned pursuant to Local Rule 72.2.  Before the Court is

the Petition of Michael Stansell ("Petitioner"), for the Writ of Habeas Corpus filed pursuant to

28 U.S.C. § 2254.  Petitioner is in the custody of the Ohio Department of Rehabilitation and

Correction pursuant to journal entry of sentence in the case CR-97-356129-ZA.  For the

following reasons, the undersigned recommends that the Petition be DENIED.

## I. Background

### A.  State Conviction

On October 23, 1997, the Cuyahoga County Grand Jury charged Petitioner with five

counts of rape of a child under the age of 13 (R.C. 2907.02) (Counts 1–5); five counts of forcible

rape of a child under age thirteen - each with an SVP specification ("SVP"), (R.C. 2907.02)

(Counts 6–10 ); ten counts of corruption of a minor (R.C. 2907.04) (Counts 11–20); five counts

gross sexual imposition - each with an SVP specification (R.C. 2907.05) (Counts 21–25); eight

counts of illegal use of a minor in nudity-oriented material (R.C. 2907.323) (Counts 26–33); and five counts of pandering sexually-oriented matter involving a minor (R.C. 2907.322) (Counts 34–38).  (Exhibit 1, Doc. No. 6-1 at 6-43).  On October 28, 1997, Petitioner pled not guilty to all charges.  (Exhibit 2, doc. No. 6-1 at44).  On December 29, 1997, the trial court found Petitioner competent to stand trial.  (Exhibit 3, Doc. No. 6-1 at 45).

On February 12, 1998, Petitioner accepted a negotiated plea agreement and changed his plea to guilty.  (Exhibit 4, Doc. No. 6-1 at 46).  He pled guilty to Counts 1 and 2 (Rape); Count 6 (Rape, with an SVP specification); Counts 11 and 12 (Corruption of a minor, with dates amended to April 8, 1996 to June 30, 1996); Count 21 (Gross sexual imposition, with an SVP specification); Count 26 (Illegal use of a minor in nudity-oriented material); and Count 34 (Pandering sexually-oriented matter involving a minor).  *Id.*  The remaining charges were dismissed.  *Id.*

Petitioner was sentenced as follows:

- Counts 1 and 2 – 5-25 years, concurrent to each other;

- Count 6 – 5 years to life, consecutive to all sentences;

- Counts 11 and 12 – 2 years concurrent to each other;

- Count 21 – 3 years to life, consecutive to all sentences;

- Counts 26 and 34 – 5 years, concurrent to each other;

(Exhibit 4, Doc. No. 6-1 at 46).  The sentence amounted to an aggregate sentence of 20 years to life.  *Id.*  The court also imposed court costs.  *Id.*  Petitioner was found to be a sexual predator and notified of his registration duties.  (Exhibit 5, Doc. No. 6-1 at 47).

2

On May 5, 1998, Petitioner moved to withdraw his guilty plea, alleging trial counsel was ineffective.  On May 20, 1998, the court denied the motion. (Exhibit 6, Doc. No. 6-1 at 48).

**B.      Direct Appeal**

On direct appeal filed July 30, 1999, Petitioner, through counsel, raised the following assignments of error:

> (1)     The appellant/defendant was sentenced contrary to law when the trial court failed to hold a hearing to determine whether the offenses to which he pled were allied offenses of similar import.
>
> (2)     The appellant/defendant's guilty plea in this matter was not knowingly, intelligently, or voluntarily given and should be vacated.
>
> (3)     The appellant/defendant's constitutional right to effective assistance of counsel was violated when such counsel failed to ask for a hearing to determine whether some of the alleged acts were allied offenses.

(Exhibit 7, Doc. No. 6-1 at 50).  On April 20, 2000, the court of appeals affirmed the judgment of the trial court. (Exhibit 8, Doc. No. 6-1 at 64).

On April 19, 2001, Petitioner, *pro se*, filed a motion for delayed appeal with the Ohio Supreme Court.  (Exhibit 10, Doc. 6-1 at 82).  On May 23, 2001 the Ohio Supreme Court denied his motion and dismissed the case.  (Exhibit 11, Doc. No. 6-1 at 87).

**C.      First Federal Habeas Corpus Petition**

On April 23, 2002, Petitioner filed a federal Petition for the Writ of Habeas Corpus, alleging the following four grounds for relief:

> (1)     Petitioner's Guilty Plea was not knowingly, intelligently, or voluntarily given and should be vacated.
>
> Supporting Facts: When Judge Timothy McGinty read the Rape charge for Cody Nyerghes, Petitioner said "not guilty...sir".  Petitioner said Not Guilty twice on that charge before Petitioner plead guilty involuntarily.

3

(2)     Petitioner's Constitutional right to effective assistance of counsel was violated when such counsel failed to ask for a hearing to determine whether some of the alleged acts were allied offenses.

Supporting Facts: Petitioner was charged with Rape and Gross Sexual Imposition on Cody Nyerghes for that same time frame. There was no mention of an allied offense hearing, by the Judge, prosecutor or Petitioner's attorney when Petitioner was pleading guilty.

(3)     Petitioner was not sentenced correctly due to prosecution error.

Supporting Facts: Prosecution dropped the "force or threat of force" on the rape charge for Cody Nyerghes.  Therefore the life sentence should be dropped, which it was not.  Also Petitioner was charged with a life sentence on gross sexual imposition, which does not carry a life sentence.

(4)     Petitioner did not have a sexual violent predator hearing to determine if Petitioner should be convicted under such law.

Supporting Facts: Prosecution failed to hold a hearing to determine if Petitioner should be convicted as a sexual violent predator.  Prosecution conviction for a sexual violent predator was determined upon the petitioner was sentenced on a life sentence for the rape and gross sexual imposition charges, which Petitioner should have not been sentenced under as stated above in 12 (C).

(Exhibit 12, Doc. No. 6-1 at 88-93).

On June 27, 2002, the district court denied the petition, finding that Petitioner's claims were procedurally defaulted and time-barred. (Exhibits 13, Doc. No. 6-1 at 94-97).  Petitioner filed a motion for reconsideration, which the court denied on September 16, 2002.  (Exhibits 15 & 16, Doc. No. 6-1 at 99-144).

**D.     Motion to Vacate/Set Aside Judgment**

On February 25, 2004, Petitioner filed a motion in the state trial court for appointment of counsel, and he sought to vacate and set aside the judgment of conviction or sentence.  (Exhibit 17, Doc. No. 6-1 at 145).  He argued that the court erred by imposing consecutive sentences.  *Id.* On March 25, 2004, the court denied his motions.  (Exhibit 18, Doc. No. 6-1 at 148).

4

**E.**     **Motion to Vacate Sexually Violent Predator Enhancement Specification**

On March 6, 2013, Petitioner, through counsel, filed a Motion to Vacate Sexually Violent

Predator Enhancement Specification with state trial court.  (Exhibit 19, Doc. 6-1 at 149).  He

asserted that pursuant to O.R.C. § 2971.01(H)(1) he could not have been indicted under the SVP

Specification, because he did not have a prior criminal record.  As such, he maintained, the court

had no jurisdiction to accept his plea or sentence him for the SVP enhancement specification.

(Exhibit 19, Doc. 6-1 at 153-155).  The State opposed the motion, and Petitioner filed a

supplemental motion to vacate in response.  (Exhibits 20 & 21, Doc. No. 6-1 at 156, 168).  On

October 4, 2013, the court denied Petitioner's motion without discussion.  (Exhibit 22, Doc. No.

6-1 at 172).  Petitioner filed a motion for reconsideration, requesting the court state its rationale

for the denial.  (Exhibit 23, Doc. No. 6-1 at 173).  On October 24, 2013, the court denied the

motion.  (Exhibit 24, Doc. No. 6-1 at 176).

Petitioner filed a *pro se* appeal, raising the following assignments of error:

(1)     The trial court erred by classifying appellant under the sexually violent predator
        specification pursuant to R.C. § 2971.01, R.C. § 2971.03(A)(3), & R.C. §
        2929.14(B).

(2)     The trial court erred by imposing a sentence of life to the charge of rape pursuant
        to R.C. § 2907.02 [1998], when the trial court amended and deleted the force or
        threat of force language from the indictment.

(3)     The trial court erred by imposing a sentence of life to the charge of gross sexual
        imposition pursuant to R.C. § 2907.05 [1998].

(4)     The trial court erred by not sentencing appellant at the time of sentencing to
        post-release control pursuant to *State v. Harris*.

(Exhibit 26, Doc. No. 6-1 at 179).  The State filed a brief in opposition.  (Exhibit 27, Doc. No. 6-

1 at 193).  On April 17, 2014, the court of appeals affirmed the trial court's judgment but

5

concluded that the trial court had erred when it failed to impose a term of post-release control as part of Petitioner's original 1998 sentence.  *State v. Stansell*, 10 N.E.3d 795, 798–99 (Ohio Ct. App. 2014); (Exhibit 31, Doc. No. 6-1 at 232).  The case was remanded with instructions that the trial court "properly advis[e] and impos[e] upon Stansell the requisite period of postrelease control."  *Id.* at 799.

On June 30, 2014, Petitioner filed an untimely *pro se* notice of appeal with the Ohio Supreme Court and moved for a delayed appeal.  (Exhibit 33, Doc. No. 6-1 at 245).  On September 3, 2014, the Ohio Supreme Court denied the motion and dismissed the case. (Exhibit 34, Doc. No. 6-1 at 269).

**F.     Resentencing**

On May 19, 2014, Petitioner was resentenced pursuant to the court of appeal's remand order.  (Exhibit 35, Doc. No. 6-1 at 270).  The trial court imposed the same sentence as it did in 1998, including the imposition of court costs, but with the addition of a term of five years mandatory post release control.  During the sentencing hearing, Petitioner was advised that if he "violates that supervision or condition of post release control, under RC 2967.131(B), [the] parole board may impose a prison term as part of the sentence of up to one-half of the stated prison term originally imposed upon" him.  (Exhibit 35, Doc. No. 6-1 at 270).

Petitioner appealed the imposition of court costs, and on May 14, 2015, the court of appeals affirmed.  (Exhibit 42, Doc. No. 6-1 at 305).  Petitioner did not appeal to the Ohio Supreme Court.  On October 24, 2014, Petitioner returned to the trial court and filed a motion to waive court costs and to comply with the original 1998 judgment. (Exhibit 43, Doc. No. 6-1 at 310). The court denied the motion. (Exhibit 44, Doc. No. 6-1 at 314).

6

### G.     Other Motions

On February 5, 2015, Stansell filed a Rule 60(b) motion in the court of appeals, alleging mistakes, inadvertence, excusable neglect, new discovered evidence, and fraud.  (Exhibit 45, Doc. No. 6-1 at 315).  He argued that because neither he nor counsel received a copy of the April 17, 2014 judgment, he was unable to perfect an appeal with the Ohio Supreme Court.  (Exhibit 45, Doc. No. 6-1 at 316).  The court denied the motion, because Civ.R. 60(B) is not applicable to the court of appeals. (Exhibit 46, Doc. No. 6-1 at 325).

On February 25, 2015, Petitioner filed a motion under App.R. 30(A) seeking the same relief that he did in his earlier motion.  (Exhibit 47, Doc. No. 6-1 at 326).  The court denied the motion.  (Exhibit 48, Doc. No. 6-1 at 334).

On June 8, 2015, Petitioner moved the trial court to issue a *nunc pro tunc* correction of the original 1998 judgment.  (Exhibit 49, Doc. No. 6-1 at 335).  Petitioner asserted that the sentencing transcripts show that the court did not impose court costs. (Exhibit 49, Doc. No. 6-1 at ).  On July 25, 2015, the court issued a *nunc pro tunc* entry specifying that costs were waived. (Exhibit 50, Doc. No. 6-1 at 342).

### H.     The Instant Petition

On June 30, 2015, Stansell filed the instant Petition for the Writ of Habeas Corpus, alleging one ground for relief:

> **GROUND ONE:**  Petitioner was deprived of due process of law where the indictment and evidence were insufficient as a matter of law to sustain the SVP specification, which is the sole factor for the "life tail".

> **Supporting Facts:** The relevant statutes mandated a prior conviction for a sexual offense in order to charge a sexually violent predator (SVP) specification, which was non-existent in this case.  Moreover, the trial court amended the indictment to remove all

7

"force" element specifications, rendering the resultant "life tail" unsupportable due to insufficient indictment and insufficient evidence, thus violating due process of law.

(Doc. No. 1, 5).

On October 5, 2015, Respondent filed an Answer/Return of Writ arguing for dismissal on the ground that, among other things, the Petition is an unauthorized second or successive petition.  (Doc. No. 6).  On October 29, 2015, Petitioner entered a notice of voluntary dismissal without prejudice, in which he asserted that he "was unaware of the requirement to present a request to the United States Court of Appeals to proceed with a second or successive Habeas Petition."  (Doc. No. 7).

Petitioner thereafter filed his application to file a second or successive petition with the Sixth Circuit.  On July 1, 2016, a panel of the Sixth Circuit entered an opinion and order denying petitioner's application as unnecessary and transferring to district court for further proceedings. The court explained that Petitioner's 2014 resentencing amounted to "intervening judgment that permits Stansell to raise challenges to his (undisturbed) conviction, his (undisturbed) term of incarceration, and his (new) term of post-release control[.]"  *In re Stansell*, 828 F.3d 412, 416 (6th Cir. 2016).

On July 5, 2016, with the second or successive count being reset to zero, the matter was reopened in district court, and on July 8, the Magistrate Judge issued an order requiring Respondent to file a Return of Writ within sixty (60) days.  (Doc. No. 11 at 1).  On July 25, 2016, Respondent filed a motion to dismiss the petition as time-barred.  (Doc. No. 12).  In the memorandum in support, although acknowledging that the 2014 resentencing restarted the second or successive count, Respondent asserted that the 2014 resentencing did not serve to reset the limitations clock with respect to Petitioner's only stated ground for relief, which challenges

8

the imposition of the sexually violent predator specification.  (Doc. No. 12 at 13-15).  In support, Respondent cited *Bachman v. Bagley*, 487 F.3d 979, 984 (6th Cir.2007), asserting that *Bachman* "definitively" resolves the limitations issue in the present case.  (Doc. No. 12 at 15).  Petitioner filed a memorandum in opposition.  (Doc. No. 13).

On December 21, 2016, this Court issued an order denying Respondent's motion to dismiss without prejudice to reassert his limitations arguments in a fully briefed return of writ. (Doc. No. 14).  The Court noted the existence of extensive negative treatment of *Bachman*, none of which was addressed by Respondent.  The Court noted that a recent Sixth Circuit case, *Crangle v. Kelly*, 838 F.3d 673 (6th Cir. 2016), abrogates or at least severely diminishes *Bachman's* precedential value.  Respondent was directed to file a new return, and if he chose, address *Crangle's* impact on the statute of limitations issue in the present case.  (Doc. No. 14 at 6).

On January 6, 2017, Respondent filed his Answer/Return of Writ, and on January 23, 2017, Petitioner filed his Traverse.  (Doc. No. 15, 16).  This matter is now fully briefed and ready for the Court's consideration.

## II. Statute of Limitations

Respondent maintains the Petition is time-barred.  Claims for habeas relief are subject to a one-year statute of limitations.  28 U.S.C. § 2244(d).  The limitations period begins to run from the latest of four events:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

9

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d).  Here, respondent asserts that § 2244(d)(A) is the relevant provision.  As such, Respondent argues, Petitioner's case would have become final for purposes of AEDPA when certiorari was denied or the time to file for certiorari expired.  *Lawrence v. Florida*, 549 U.S. 327, 333 (2007).

Petitioner's sentence and conviction were affirmed by the intermediate state court of appeals on April 20, 2000.  (Doc. No. 6-1, Exhibit 8).  Petitioner did not timely seek direct review with the Supreme Court of Ohio.  As such, Respondent maintains, Petitioner's conviction became final on June 5, 2000, the date when the time for seeking direct review expired.  Accordingly, the statute of limitations began to run on June 6, 2000 and, absent tolling, expired on June 6, 2001.  Respondent maintains, therefore, that the Petition, submitted in 2015, was fourteen years late.

Respondent further argues that Petitioner's resentencing in 2014 did not restart the limitations period with respect to Petitioner's sole claim for relief–that there was insufficient evidence to support his designation as a sexually violent predator.  In support, again Respondent cites *Bachman v. Bagley*, 487 F.3d 979, 980 (6th Cir. 2007), in which a state prisoner was deemed a sexual predator during adversarial proceedings under Ohio's sex offender registration law, approximately nine years after he was originally sentenced for various sex crimes.  On a limitations challenge to his federal habeas petition, the Sixth Circuit held that the sexual predator designation restarted the AEDPA limitations clock with respect to his habeas challenge to the

10

sexual predator designation *only*. *Id.*  The court rejected the petitioner's contention that the limitations clock should restart with respect to his challenges to his underlying conviction. *Id.*  Thus, *Bachman* contemplated the idea of a "divisible" judgment where an amendment to his sentence restarted the limitations period for challenges to the amended portion only.  Respondent maintains that if *Bachman* is applied to this case, the matter should be dismissed on limitations grounds.

While this Court's previous order noted that recent Sixth Circuit case law seems to call into question *Bachman's* validity, it is also notable that in July 2016, when the instant matter was before the Sixth Circuit on the question of whether the Petition was "second or successive," the Sixth Circuit explicitly addressed the precedential value of *Bachman* in light of Supreme Court and Sixth Circuit precedent.  In determining whether Petitioner's resentencing reset the second or successive count to zero, the *Stansell* panel considered the idea of employing *Bachman's* "divisible" judgment concept in the context of the "second or successive" analysis.  The court rejected that idea with the following reasoning:

> Extending *Bachman* to this case would require us to split a single judgment into multiple mini-judgments, each of which would serve as a distinct baseline for purposes of the second or successive inquiry. We then would have to assess each claim in a habeas petition separately, determining whether it attacked the reinstated portion of the judgment or the newly imposed portion, and we would have to subject the former claims to the second or successive requirements while exempting the latter from them. (We might have to split habeas petitions even more finely, dividing a single claim that attacks both parts of the judgment into two distinct claims, only one of which would have to overcome the second or successive bar.

*In re Stansell*, 828 F.3d 412, 418 (6th Cir. 2016).  The court ultimately held that Petitioner's partial resentencing created an intervening singular judgment that allowed him to challenge his original conviction and sentence and his new term of post release control.  The court reached this

11

conclusion based on, *inter alia*, the Supreme Court decision *Magwood v. Patterson* and the Sixth

Circuit decision *King v. Morgan*.  The petitioners in both cases had their state sentences vacated

and they were fully resentenced.  In *Magwood* it was determined that the second or successive

bar does not apply to a habeas challenge to the new sentence.  *Magwood v. Patterson*, 561 U.S.

320, 339 (2010).  *King v. Morgan* went one step further holding "that a habeas petitioner, after a

full resentencing and the new judgment that goes with it, may [also] challenge his undisturbed

conviction without triggering the 'second or successive' requirements."  *King v. Morgan*, 807

F.3d 154, 156 (6th Cir. 2015).  Thus, based on *Magwood* and *King*, the *Stansell* panel took

another step and concluded that his *partial* resentencing reset the second or successive count to

zero with respect his previous undisturbed conviction and sentence and his new term of post

release control.

 While the *Stansell* Court rejected *Bachman's* "divisible judgment" concept in the context

of a second or successive analysis, in favor *Magwood* and *King's* singular judgment concept, the

court concluded that neither its analysis nor the holdings of *Magwood* and *King* had any bearing

on *Bachman's* value as precedent:

> None of this should be taken to call *Bachman* into doubt.  All that this decision and all
> that *King* attempt to do is try to apply *Magwood* faithfully in the second-or-successive
> context.  These decisions, and most importantly, *Magwood*, do not answer the distinct
> statute of limitations question raised in *Bachman*.

*Stansell*, 828 F.3d at 418.

 However, about three months later, the Sixth Circuit revisited the issues raised in

*Bachman*.  In *Crangle v. Kelley*, the Sixth Circuit was called upon to decide whether five years

after a state prisoner's conviction and sentence, a correction of judgment to include post release

control amounted to a new judgment that restarted the one-year statute of limitations period.  838

F.3d 673 (6th Cir. 2016).  The Sixth Circuit concluded that, even though the state trial court characterized the correction as a *nunc pro tunc* order, because the imposition of post-release control materially increased the restrictions on the petitioner's liberty, it amounted to a new judgment that reset the limitations clock.  *Id.* at 678.  In reaching this conclusion, the court reviewed both *Magwood* and *King*, and while noting that both decisions were limited to second or successive petitions, the court concluded that those cases' interpretation of a "singular judgment" applied with equal force in the context of a limitations analysis.  *Id.*  Accordingly, the court held that "because '[t]he sentence is the judgment' . . ., a new sentence not only permits a challenge to either the new sentence or the undisturbed conviction, but also restarts AEDPA's one-year window to challenge that judgment."  *Id.*

In reaching its conclusion, the *Crangle* court declared that *Magwood* and *King* had abrogated *Bachman*, which was contrary to its assertion two months earlier in *Stansell* that neither *Magwood* nor *King* answered the distinct statute of limitations question presented in *Bachman*.  To make matters more confusing, in a footnote in an unpublished opinion that was issued after *Crangle*, the Sixth Circuit cited *Stansell* and seemed to suggest that *Bachman* was still good law:

> Notably, the trial court's later imposition of post-release control did not affect the application of the statute of limitations as to claims arising out of Jackson's convictions or original sentence, which remained unchanged.  *See In re Stansell*, 828 F.3d 412, 417 (6th Cir. 2016) (noting continuing validity of *Bachman v. Bagley*, 487 F.3d 979 (6th Cir. 2007), in context of statute-of-limitations questions).

*Jackson v. Lazaroff*, No. 15-4335 (6th Cir. Nov. 21, 2016).

In the present case, Respondent asserts that the Court should not follow *Crangle* because it is bad law.  Instead, Respondent contends that, contrary to statements contained in *Crangle*,

13

*Bachman* is still controlling law.  As described above, *Bachman* stands for the proposition that a petitioner's resentencing starts the running of the statute of limitations period with respect to challenges to the new worse-than-before aspects of his sentence *only*, i.e. his designation as a sexual predator – not with respect to challenges to his undisturbed underlying conviction. *Bachman*, 487 F.3d at 983.

In support of his position that *Bachman* is still good law, Respondent asserts that one "panel of [the Sixth Circuit] cannot overrule the decision of another panel."  Further, "[t]he prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or [the Court of Appeals] sitting *en banc* overrules the prior decision."  *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985).  Thus, Respondent argues, *Crangle*, being neither a Supreme Court nor an *en banc* decision, could not have overruled *Bachman*.

After having carefully considered the parties' arguments and the case law described above, the Court declines to address the question the limitations question raised in this case. Based on this Court's reading of *Bachman*, *Stansell*, *Crangle*, and *Jackson*, it is fair to say that the law is not well-settled.  As discussed below, because Petitioner's claim is both procedurally defaulted and lacking in merit, the Court need not address the limitations question.  *See Ahart v. Bradshaw*, 122 F. App'x 188, 192 (6th Cir. 2005) (declining to address a limitations issue where petitioner's claims failed on the merits).

14

### III.  Exhaustion and Procedural Default

**A.    Legal Standard**

A habeas petitioner must exhaust his state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b),( c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir.1990).

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).  A claim may become procedurally defaulted in two ways.  *Id.*  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court.  *Id.; see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[1]  *Id.*

---

[1] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138–39; *Barkley v. Konteh*, 240 F. Supp.2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)." *Lovins v.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted.  *Engle v. Isaac,* 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991); *Lovins*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.").  This second type of procedural default is often confused with exhaustion.  Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id.*  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Id.*  Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a

---

*Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

"petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error.  *See Maupin*, 785 F.2d at 138–39.  "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.*  Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied.  *See United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).  Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different.  *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman v. Thompson*, 501 U.S. 722, 749–50 (1991).  Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  *See also Jones v. Bradshaw*, 489 F. Supp.2d 786, 807 (N.D. Ohio 2007); *Allen v. Harry*, 2012 WL 3711552 at * 7 (6th Cir. Aug. 29, 2012).

**B.      Application to Petitioner**

Respondent maintains that Petitioner's single ground for relief is procedurally defaulted because Petitioner did not raise it in either the court of appeals or the Ohio Supreme Court. Petitioner's sole claim in the present case is that he "was deprived of due process where the indictment and evidence were insufficient as a matter of law to sustain the SVP specification, which is the sole factor for the "life tail."  After reviewing Petitioner's submissions, this Court concludes that the due process claim being asserted here was not fairly presented in the state courts.

In his direct appeal, Petitioner asserted three claims:

(1)     that he was sentenced contrary to law when the trial court failed to hold a hearing to determine whether the offenses to which he plea were allied offenses of similar import;

(2)     that his guilty plea was not given knowingly, intelligently, or voluntarily; and

(3)     that his counsel was ineffective when he failed to ask for hearing to determine whether some of the alleged acts were allied offenses.

18

(Doc. 6-1 at 52).  None of these claims can be reasonably construed to assert a federal due process claim in relation to the sufficiency of the evidence.  Further, Petitioner did not timely seek review by the Ohio Supreme Court.

Nor did petitioner raise his instant claim when he filed a motion to vacate his sexually violent predator designation in 2013.  (*See* Doc No. 6-1 at 149).  After the motion was denied by the trial court, he appealed and raised four assignments of error:

(1)     The Trial Court Erred by Classifying Appellant under the Sexually violent predator specification pursuant to R.C. § 2971.01, R.C. § 2971.03(A)(3), & R.C. § 2929.14(B).

(2)     The trial court erred by imposing a sentence of life to the charge of rape, pursuant to R.C. § 2907.02[1998], when the trial courts amended and deleted the force or threat of force language from the indictment.

(3)     The trial court erred by imposing a sentence of life to the charge of gross sexual imposition pursuant to R.C § 2907.05

(4)     The trial court erred by no sentencing appellant at the time of sentencing to post-release control pursuant to *State v. Harris*.

(Doc. No. 6-1 at 185).  As above, none of the claims asserted in the 2013 appeal raise a due process issue.  Petitioner did not rely on cases employing federal constitutional analysis on the issue of due process or sufficiency of the evidence.  *See Williams*, 460 F.3d at 806.  Nor did he frame his claims in terms sufficiently particular to identify the constitutional right he now claims was denied.  *Id.*  Although Petitioner asserted that the state trial court erred by classifying him as a sexually violent predator, he framed the error as an issue of state not federal law, arguing that pursuant to the Ohio Supreme Court decision *State v. Smith*, 104 Ohio St. 3d 106 (2004), he could not have been properly designated as a sexually violent predator because he did not have a prior conviction for a sexually violent offense.  (Doc. 6-1 at 3-6).

19

Petitioner argues, however, that he did raise a due process argument in the 2013 appeal when he asserted that the trial court was without subject matter jurisdiction to sentence him to the life sentence that was imposed.  Petitioner argues that by invoking a lack of subject matter jurisdiction, he was effectively asserting a due process claim because "it is axiomatic that the lack of subject matter jurisdiction constitutes a due process claim."  Assuming *arguendo* that this proposition of law is correct, the Court concludes that mere assertion that subject matter jurisdiction was lacking would not have put the state court on notice that it was being called upon to determine whether Petitioner's due process right was violated when he was designated a sexually violent predator.

In sum, Petitioner did not fairly present his claim that his due process rights were violated when he was classified as a sexually violent predator on either direct appeal or in collateral proceedings.  Further, Petitioner did not timely seek the review of the Ohio Supreme Court. Therefore, Petitioner's instant claim is procedurally defaulted.

### Cause and Prejudice

A petitioner's default may be excused upon a showing of "cause" and "actual prejudice" from the alleged error.  In the present case, Petitioner contends that "[t]he 'cause and prejudice' arguments are inapposite to this case and [he] submits that, based upon the actual facts, he need not address the arguments."  (Doc. No. 16 at 9).  With this statement, Petitioner has essentially waived any argument relating to cause and prejudice.  Further, upon the Court's review of the record, it is not evident that an objective factor external to Petitioner's defense impeded his efforts to seek the appropriate review in the state courts of appeal.  *See Franklin*, 434 F.3d at 417. Moreover, given that Petitioner's claim is without merit, as described in the following

20

pages, there is no "reasonable probability" that the outcome would have been different. *See Mason*, 320 F.3d at 629 (6th Cir. 2003). Therefore, Petitioner's default cannot be excused on the basis of cause and prejudice.

> *Actual Innocence*

Next, the Court considers whether procedural default should be excused because Petitioner is actually innocent. Petitioner fails to provide "any new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial," *Schlup*, 513 U.S. at 324, that would support the claim that he is actually innocent. Thus, in the absence of such evidence, Petitioner's procedural default cannot be excused on actual innocence grounds.

## IV. Review on the Merits

In the typical habeas case, this Court's review is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, which states in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

In applying the standard, a federal court reviews the last reasoned state court decision, and the "standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)). In the present case, however, Petitioner's claim was not fairly presented to the state courts of appeal. As such, there is no state court decision or reasoning to which this Court can defer. Without any decision or reasoning by the state courts, "any attempt to determine whether the state court decision 'was contrary to, or involved an unreasonable application of clearly established Federal law,' 28 U.S.C. § 2254(d)(1), would be futile." *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003). Thus, in such a situation, the Court must "'exercise [its] independent judgment' and review the claim *de novo*." *Id.* (quoting *Hain v. Gibson*, 287 F.3d 1224, 1229 (10th Cir.2002)).

Here, Petitioner maintains that he "was deprived of due process of law where the indictment and evidence were insufficient as a matter of law to sustain the SVP specification, which is the sole factor for the 'life tail.'" He further asserts that

> [t]he relevant statutes mandated a prior conviction for a sexual offense in order to charge a sexually violent predator (SVP) specification, which was non-existent in this case. Moreover, the trial court amended the indictment to remove all "force" element specifications, rendering the resultant "life tail" unsupportable due to insufficient indictment and insufficient evidence, thus violating due process of law.

(Doc. No. 1, 5).

First, to the degree that Petitioner asserts that the trial court erred in its application of the relevant state statutes, his claim is non-cognizable on habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions" And, the same is true of his assertion that the

22

indictment was somehow deficient.  *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir.1986) ("Beyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review.").  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle*, 502 U.S. at 67-68.

To the extent Petitioner claims his designation as a sexually violent predator violated due process, his claim has no merit.  Due process is violated when a defendant is found guilty on insufficient evidence.  *Jackson v. Virginia*, 443 U.S. 307, 316 (1979) (under the Due Process clause, "no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof--defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense").  However, a defendant who enters a plea of guilty waives his right to trial, effectively eliminating the government's burden to prove guilt beyond a reasonable doubt.  *Fautenberry v. Mitchell*, 515 F.3d 614, 636 (6th Cir. 2008) ("A guilty or no-contest plea involves a waiver of many substantial constitutional rights.").  By pleading guilty, Petitioner waived any objection to the sufficiency of  the evidence.  *See Post v. Bradshaw*, 621 F.3d 406, 426-27 (6th Cir. 2010).

Petitioner argues in his traverse that the waiver was not effective, because he did not understand the "true nature of the charge."  (Doc. No. 16 at 10).  To the degree that Petitioner argues his plea was not knowing and voluntary, his claim is rejected as an attempt to seek relief on a ground that was not raised in his habeas petition.

23

## V. Conclusion

For all the reasons set forth above, it is recommended that the Petition be DENIED.


Date:  July 19, 2017                                    s/Jonathan D. Greenberg
                                                 Jonathan D. Greenberg
                                                 United States Magistrate Judge


### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

24